IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| BRIAN E. HEIBEL, *et al.*, on behalf of themselves and others similarly situated, | **Case No. 2:11-cv-00593** |
| Plaintiffs, | **Judge Sargus** **Magistrate Judge King** |
| v. | |
| U.S. BANK NATIONAL ASSOCIATION, | |
| Defendant. | |

**PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM OF LAW FOR APPROVAL OF ATTORNEYS' FEES, COSTS, AND ENHANCEMENT PAYMENTS**

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES** ..................................................................................iii

**INTRODUCTION**................................................................................................1

**BRIEF FACTUAL BACKGROUND AND PROCEDURAL HISTORY** ............................3

**ARGUMENT** ....................................................................................................7

   I.   CLASS COUNSEL'S ATTORNEYS' FEES ARE REASONABLE ...............................7

     A.   The Court Should Adopt the Percentage Approach to Award Attorneys' Fees ............7

     B.   The *Ramey* Factors Weigh in Favor of Awarding the Requested Fees ........................8

       1.   The settlement provides a substantial benefit to the class ........................................8

       2.   Society's stake in rewarding attorneys who produce the benefits to the class in order to maintain an incentive to others...................................................................9

       3.   Class Counsel undertook considerable risk of nonpayment in litigating this case on a contingency basis ..............................................................................................10

       4.   The lodestar cross check supports approval of the requested fees...........................12

       5.   The complexity of this litigation weighs in favor of the requested award..............14

       6.   Class counsel's skill supports approval ................................................................15

       7.   The requested fee award is comparable to fee awards in similar cases .................16

   II.   CLASS COUNSEL'S REQUEST FOR REIMBURSEMENT OF NECESSARY EXPENSES SHOULD BE APPROVED ...................................................................17

   III.   THE PROPOSED ENHANCEMENT PAYMENTS ARE REASONABLE ..............17

**CONCLUSION** ................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                                          **<u>Page(s)</u>**

*Bailey v. AK Steel Corp.*, No. 1:06-cv-468, 2008 WL 553764 (S.D. Ohio Feb. 28, 2008) .... 13

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013) ................................................ 14

*Bowling v. Pfizer, Inc.*, 102 F.3d 777 (6th Cir. 1996) ............................................................. 7

*Brotherton v. Cleveland*, 141 F. Supp. 2d 907 (S.D. Ohio 2001) .......................................... 16

*Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-CV-1119,
2011 WL 292008 (S.D. Ohio Jan. 26, 2011) ......................................................................... 8

*Cougill v. Prospect Mortg., LLC*, No. 1:13CV1433 JCC/TRJ,
2014 WL 130940 (E.D. Va. Jan. 14, 2014) ........................................................................... 11

*Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694,
2010 WL 776933 (N.D. Ohio Mar. 8, 2010) ..................................................................... 16,19

*Enter. Energy Corp. v. Columbia Gas Transmission Corp.*,
137 F.R.D. 240 (S.D. Ohio 1991) ......................................................................................... 15

*Foster v. Nationwide Mut. Ins. Co.*, 710 F.3d 640 (6th Cir. 2013) ...................................... 1,9

*Gentrup v. Renovo Servs., LLC*, No. 1:07-cv-430,
2011 WL 2532922 (S.D. Ohio, June 24, 2011) ................................................................. 9,12

*Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610 (6th Cir. 2007) ............................................. 10

*Hainey v. Parrott*, 617 F. Supp. 2d 668 (S.D. Ohio 2007) ................................................... 18

*Hantz v. Prospect Mortg., LLC*, No. 1:13CV1435 JCC/TRJ,
2014 WL 463019 (E.D. Va. Feb. 5, 2014) ............................................................................ 11

*Henry v. Quicken Loans, Inc.*, 698 F.3d 897 (6th Cir. 2012) ........................................... 1,9,11

*In re BankAmerica Corp. Sec. Litig.*, 228 F. Supp. 2d 1061 (E.D. Mo. 2002) ..................... 17

*In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752 (S.D. Ohio 2007) ............... 7,12-14

*In re Datatec Systems*, No. 04-CV-525 (GEB),
2007 WL 4225828 (D.N.J. Nov. 28, 2007) .......................................................................... 17

*In re DPL, Inc., Sec. Litig.*, 307 F. Supp. 2d 947 (S.D. Ohio 2004) ..................................... 7

*In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952,
2012 WL 5493613 (E.D. Mich. Nov. 13, 2012) ................................................... 17

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998) ................................................................................ 13

*In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491 (W.D. Pa. 2003) ........................ 17

*In re S. Ohio Corr. Facility*, 173 F.R.D. 205 (S.D. Ohio 1997) ............................ 16

*In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72 (D.N.J. 2001) ........ 17

*In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029 (S.D. Ohio 2001) ........ 16

*In re Telectronics Pacing Sys., Inc.*, 148 F. Supp. 2d 936 (S.D. Ohio 2001) ........ 16

*Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-0729,
2012 WL 1945144 (S.D. Ohio May 30, 2012) ............................................... 10,16

*Johnson v. Midwest Logistics Sys., Ltd.*, No. 2:11-CV-1061,
2013 WL 2295880 (S.D. Ohio May 24, 2013) ............................................... 16,18,19

*Lewis v. Huntington Nat'l Bank*, 838 F. Supp. 2d 703 (S.D. Ohio 2012)................ 11

*Lowther v. AK Steel Corp.*, No. 1:11-cv-877,
2012 WL 6676131 (S.D. Ohio Dec. 21, 2012) .......................................... 7,12,13,15

*McHugh v. Olympia Entm't, Inc.*, 37 F. App'x 730 (6th Cir. 2002)........................ 12

*Mortgage. Bankers Ass'n v. Harris*, 720 F.3d 966 (D.C. Cir. 2013)...................... 11

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F. 2d 1188 (6th Cir. 1974) .............. 7,8,12,16

*Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09CV1608,
2010 WL 2490989 (N.D. Ohio June 15, 2010).................................................... 16

*Smillie v. Park Chem. Co.*, 710 F. 2d 271 (6th Cir. 1983)................................... 15

*Swigart v. Fifth Third Bank*, 870 F. Supp. 2d 500 (S.D. Ohio 2012) ................... 11

## <u>Statutes</u>

Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ................................................. 3

Fair Labor Standards Act, 29 U.S.C. § 216(b)..................................................... 4

Fair Labor Standards Act, 29 U.S.C. § 259 ................................................................4

Ohio Constitution, Article II § 34(a) ........................................................................3

Ohio Minimum Fair Wage Standards Act, § 4111.01 ...............................................3

Ohio Minimum Fair Wage Standards Act, § 4111.03 ...............................................3

Ohio Minimum Fair Wage Standards Act, § 4111.10 ...............................................3

Ohio Prompt Pay Act, § 4113.15 ..............................................................................3

**Rules**

Fed. R. Civ. P. 23(h) ..............................................................................................2,7

Fed. R. Civ. P. 54(d)(2) ..........................................................................................2,7

**Other Authority**

Herbert Newberg & Alba Conte, *Newberg on Class Actions*,
§ 14.03 at 14-5 (3d ed. 1992) ..................................................................................13

Administrator's Interpretation No. 2010-1, 2010 WL 1822423 (Mar. 24, 2010) ...................11

## <u>INTRODUCTION</u>

This is a collective and class action lawsuit for unpaid overtime wages originally brought by Plaintiffs Brian E. Heibel, Ryan V. Mook, Trisha E. Murray, Cliff Bostrom, Lee W. Struck, and Christopher B. Kusserow ("Original Named Plaintiffs"), on behalf of themselves and all other Mortgage Loan Originators ("MLOs") employed by Defendant U.S. Bank National Association (hereinafter "Defendant").  In August 2013, the parties reached a proposed settlement of $6,450,000, which the Court preliminarily approved on January 17, 2014.  (ECF No. 158.)  As detailed in Plaintiffs' Unopposed Motion for Preliminary Settlement Approval (ECF No. 157) and Plaintiffs' Unopposed Motion for Final Class and Collective Action Settlement Approval (filed concurrently with this motion), the proposed settlement represents a substantial recovery for the participating class and collective action members ("class members") and was well-received.

Dockets in large class actions like this one are often replete with contested motions involving complicated procedural issues (*e.g.*, FLSA conditional certification, Rule 23 class certification, FLSA decertification), costly and time consuming discovery issues (*e.g.*, motions to compel electronically stored information, expert discovery, protective orders), and extensive motion practice on the merits of the parties' claims and defenses (*e.g.*, motions to dismiss, cross motions for summary judgment).  And in Class Counsel's experience, more and more class action cases involving wage and hour claims are being tried and appealed.  *See, e.g.*, *Henry v. Quicken Loans, Inc.*, 698 F.3d 897 (6th Cir. 2012); *Foster v. Nationwide Mut. Ins. Co.*, 710 F.3d 640 (6th Cir. 2013).

Here, the parties' motion practice was limited to an early motion to dismiss and FLSA conditional certification.  But the absence of additional contested motions does not mean that the parties agreed on the facts and law at issue in this case.  Nor should the Court assume that

1

there was little risk in the litigation.  To the contrary, the parties sharply disputed the crucial facts and legal issues, including *inter alia*, whether Defendant properly classified MLOs as exempt, the number of hours MLOs worked, whether Defendant made its decision to classify MLOs as exempt in good faith, and whether MLOs were sufficiently similarly situated to proceed to trial as a FLSA collective or as Rule 23 classes.  Yet the parties also recognized that litigating those disputes through summary judgment, trial, and potentially appeal, would (1) require the expenditure of a significant amount of attorney and party time and resources, and (2) leave them open to significant risk.  Notwithstanding their disagreements, and in consideration of the risk and expense associated with litigation, the parties negotiated the significant settlement currently pending before the Court.

Class Counsel's prosecution of this case included a thorough investigation of class members' claims and Defendant's defenses, but also an efficient use of resources.  They interviewed hundreds of opt-in Plaintiffs, reviewed extensive documents and data regarding their job duties and potential damages, successfully certified the FLSA collective action and issued the Court-approved notice to the putative collective class, and negotiated the settlement. Even after the settlement is approved and the Court's docket is closed, Class Counsel will continue to represent the class members to ensure that the terms and conditions of the settlement are fully and completely satisfied.

As compensation for their work and the results obtained in this case, and pursuant to Rules 23(h) and 54(d)(2), Plaintiffs respectfully request the Court award Class Counsel attorneys' fees in the amount of 33 ⅓% of the total settlement amount, or $2,150,000, and reimbursement of necessary and appropriate out-of-pocket litigation expenses in the amount of $34,356.50.  As explained in more detail below, the requested award is consistent with the

parties' Settlement Agreement, the fee agreement between Plaintiffs and Class Counsel, and orders from district courts within this District and Circuit. The award fairly and reasonably compensates Class Counsel for their efforts to efficiently investigate and prosecute the class members' claims, taking into account the quality, nature, and extent of Class Counsel's efforts in this complex case, the results achieved, the risk of non-payment, and the benefits to the Plaintiffs, class members, and judicial system for achieving the result through settlement. In addition, Plaintiffs request that the Court approve the parties' agreement to award enhancement payments to the six Original Named Plaintiffs in the amount of $5,000 each, and to the fifteen remaining Named Plaintiffs in the amount of $2,000 each.

## BRIEF FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In the original Complaint, filed on July 7, 2011, the Original Named Plaintiffs alleged that Defendant violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the Ohio Minimum Fair Wage Standards Act ("OWA"), O.R.C. §§ 4111.01, 4111.03, 4111.10, the Ohio Prompt Pay Act ("OPPA"), O.R.C. §§ 4113.15, and the Ohio Constitution, Article II § 34(a), by failing to pay MLOs overtime wages, failing to record MLOs' hours worked, and making unlawful deductions from their wages. (ECF No. 1.) In response, Defendant moved to dismiss three of Plaintiffs' claims: record keeping under the FLSA, record keeping under the OWA, and improper deductions under the OPPA. (ECF No. 19.) After briefing the motion, but before the Court ruled on it, the parties entered into two stipulations, under which Plaintiffs agreed to dismiss their FLSA and OWA record keeping claims and claims against Defendants U.S. Bancorp and U.S. Bank Home Mortgage, and Defendant agreed to withdraw its motion to dismiss Plaintiffs' OPPA improper deductions claim. (ECF Nos. 26, 27.) Plaintiffs

subsequently filed a Second Amended Complaint[1] omitting the dismissed claims and corporate entities.  (ECF No. 29.)

Defendant filed its Answer on November 9, 2011, averring that it properly classified Plaintiffs and all MLOs as exempt employees under a number of different exemptions, including the administrative and outside sales exemptions.  (ECF No. 31.)  Defendant also pled a good faith defense pursuant to 29 U.S.C. § 259, claiming it was entitled to blanket immunity from liability on the grounds that its "alleged failure to pay Plaintiffs or any putative class member overtime wages, if at all, was in good faith in conformity with and in reliance on an administrative regulation, order, ruling, approval, interpretation, administrative practice, and/or enforcement policy of the United States Department of Labor and/or the Ohio Department of Commerce, Bureau of Wage-and-hour."  (*Id.*)

On November 22, 2011, Plaintiffs moved for conditional class certification pursuant to the FLSA, 29 U.S.C. § 216(b).  (ECF No. 33.)  The Court granted Plaintiffs' motion on September 27, 2012, (ECF No. 71), and after additional briefing, issued a second Order on November 9, 2012, concerning the form, content, scope, and distribution method for notice to the putative collective class (ECF No. 77).  Pursuant to the Court's Orders, Class Counsel mailed notice of the lawsuit to 1,923 putative collective class members on November 23, 2013, and emailed it to 1,037 putative collective class members on March 13, 2013.  (Lukas Decl. ¶ 3; Joint Stipulation and Order Re: Email Notice, ECF No. 131.)  A total of 511 eligible individuals joined the lawsuit as FLSA Opt-in Plaintiffs.  (Lukas Decl. ¶ 3.)

During the notice period, Class Counsel prepared for the discovery phase of the litigation by, among other things, drafting discovery requests and responses, interviewing more

---

[1] Plaintiffs' First Amended Complaint (ECF No. 5) was substantively the same as the Original Complaint.

than 375 Opt-In Plaintiffs, obtaining and reviewing documents from the Opt-In Plaintiffs, and negotiating a representative discovery plan with Defendant.  (Lukas Decl. ¶ 4; Stipulated Discovery Plan, ECF No. 127.)  In early May 2013, the parties agreed to attempt to settle the matter through private mediation conducted by Michael E. Dickstein, Esq. of Dickstein Dispute Resolution/MEDiate.  (Lukas Decl. ¶ 5; ECF No. 152.)  In preparation for the mediation session, the parties exchanged informal discovery related to the class members' dates of employment, earnings, and work states.  (Lukas Decl. ¶ 6.)  The parties also prepared and exchanged exhaustive mediation letters describing the parties' respective versions of the facts, the legal arguments that each side would make in the litigation if mediation were not successful, their views of the risk associated with continued litigation, and Plaintiffs' potential damages. (*Id.*)

The parties negotiated the broad terms of the settlement in a full day mediation session on August 6, 2013, that culminated with the parties signing to a Memorandum of Understanding.  (*Id.* ¶ 7.)  In the weeks following the mediation, the parties negotiated the details of the Settlement Agreement currently pending final approval.  (Lukas Decl. ¶ 8; Settlement Agreement, ECF No. 157-2.)  In addition, Defendant produced additional data that Class Counsel organized and formulated to generate the class members' settlement allocations. (Lukas Decl. ¶ 8; Settlement Allocations, ECF No. 157-3.)

Consistent with the Settlement Agreement, Plaintiffs filed a Third Amended Complaint on December 23, 2013, adding Carolyn Bickel, John Evans, Garret R. Glick, Kara Honebrink, Tamara Isom, Lori Jasicki, Teresa Karaffa, David Ludwig, Timothy Marlin, Tricia Newton, Heidi Randall, James Starkus, Lynda Wareham, Patricia Wicker, and Debbie Workman as named plaintiffs and class representatives, as well as class action claims under the wage-and-

hour laws of fifteen states: Arkansas, California, Colorado, Illinois, Indiana, Kansas, Kentucky, Minnesota, Missouri, Montana, Nevada, New Mexico, Oregon, Washington, and Wisconsin. (ECF No. 156.)  That same day, Plaintiffs submitted the Settlement Agreement to the Court for approval with their Unopposed Motion for Preliminary Settlement Approval.  (ECF No. 157.) The Court granted the Motion on January 17, 2014.  (ECF No. 158.)  In its Order, the Court certified the various classes, authorized the appointment of the Claims Administrator, approved the form, content, and distribution method for the proposed settlement notice, appointed Nichols Kaster, PLLP, Barkan Meizlish Handelman Goodin DeRose Wentz, LLP ("Barkan Meizlish, LLP") and Oliver Law Offices as Class Counsel, and scheduled a Final Approval Hearing for May 21, 2014 to determine (1) the overall fairness of the settlement, (2) the amount of attorneys' fees and costs to be awarded, and (3) the amount of enhancement payments to the Named Plaintiffs.  (*Id.*)

The Claims Administrator mailed the settlement notice to the 2,171 class members on February 7, 2014.  (*See* Declaration of Claims Administrator Stacy Roe ("Roe Decl.") ¶ 10 (submitted concurrently in support of Plaintiffs' Unopposed Motion for Final Settlement Approval).)  Throughout the 45-day notice period, Class Counsel responded to hundreds of calls and emails from settlement class members regarding the terms of the settlement.  (Lukas Decl. ¶ 9.)  As the April 8, 2014 notice deadline approached, Class Counsel also made extraordinary efforts to affirmatively contact hundreds of settlement class members by email, telephone, and mail to ensure they received the settlement notice, remind them of the deadline, answer their questions, and provide them with additional copies of the claim form.  (*Id.*)  Due at least in part to these efforts, the response to the settlement was positive, with 1,142 class members accepting the settlement terms by timely returning a claim form.  (Roe Decl. ¶ 15.)  Among the 1,142

participating class members are each of the 21 Named Plaintiffs, and 95% of the pre-settlement

Opt-In Plaintiffs.  (Lukas Decl. ¶ 9.)  Importantly, the settlement notice explained Class

Counsel's requested award of attorneys' fees and costs and the proposed enhancement payments

to the Named Plaintiffs.  (*See* ECF No. 157-2 p. 59-67.)  Although one class member objected

to the terms of the settlement (ECF No. 159), that objection was subsequently withdrawn (ECF

No. 160).

## ARGUMENT

### I.    CLASS COUNSEL'S ATTORNEYS' FEES ARE REASONABLE

District courts may award reasonable attorneys' fees and expenses from the settlement

of a class action upon motion under Fed. R. Civ. P. 54(d)(2) and 23(h).  *Lowther v. AK Steel*

*Corp.*, No. 1:11-cv-877, 2012 WL 6676131, at *1 (S.D. Ohio Dec. 21, 2012).  When assessing

the reasonableness of a fee petition, district courts engage in a two-part analysis.  *See In re*

*Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 760 (S.D. Ohio 2007).  First, the district

court determines the method for calculating the attorneys' fees: either the percentage of the fund

approach or the lodestar approach.  *Id.* (citing *In re DPL, Inc., Sec. Litig.*, 307 F. Supp. 2d 947,

949-51 (S.D. Ohio 2004)).  Second, the district court must analyze and weigh the six factors

described by the Sixth Circuit in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F. 2d 1188 (6th Cir.

1974).  *Id.*

#### A.    The Court Should Adopt the Percentage Approach to Award Attorneys' Fees

In the Sixth Circuit, district courts have the discretion "to determine the appropriate

method for calculating attorneys' fees in light of the unique characteristics of class actions in

general, and the particular circumstances of the actual cases pending before the Court" using

either the percentage or lodestar approach.  *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp.

2d at 761 (citing *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 779 (6th Cir. 1996)).  In this district, "the preferred method is to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier."  *Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-CV-1119, 2011 WL 292008, at *13 (S.D. Ohio Jan. 26, 2011).

Here, Plaintiffs request that the Court adopt the percentage approach to award Class Counsel's attorneys' fees in the amount of 33 ⅓% of the Settlement Fund, or $2,150,000.

### B.      The *Ramey* Factors Weigh in Favor of Awarding the Requested Fees

In reviewing the reasonableness of the requested award, the Sixth Circuit requires district courts to consider six factors:

(1) the value of the benefits rendered to the class;
(2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others;
(3) whether the services were undertaken on a contingent fee basis;
(4) the value of the services on an hourly basis [the lodestar cross-check];
(5) the complexity of the litigation; and
(6) the professional skill and standing of counsel on both sides.

*Ramey*, 508 F. 2d at 1194-97.  Each of these factors weighs in favor of awarding the requested attorneys' fees.

#### 1.   *The settlement provides a substantial benefit to the class*

Class Counsel's work resulted in a settlement of $6,450,000.  As explained in Plaintiffs' concurrently filed Unopposed Motion for Final Class and Collective Action Settlement Approval, after deductions for the requested attorneys' fees, costs, enhancement awards, reserve fund, and LWDA payment, $4,120,643.50 will be distributed to the 1,142 participating class members.  (Lukas Decl. ¶ 10.)  Importantly, unlike some common fund settlements, **no portion** of the settlement will revert to Defendant.  (Settlement Agreement, ECF No. 157-2, § VI ¶ 2.2.1.)  Instead, funds initially allocated to unresponsive class members are reallocated to

participating class members on a *pro rata* basis.  (*Id.*)  This reallocation results in an average

recovery of $3,608.26, an increase of $1,710 from the average initial allocation.  (Lukas Decl. ¶

11.)  Separate from the monetary considerations, the benefit of the settlement is also evidenced

by the fact that the settlement equates to each class member receiving four hours of overtime

pay for every week they worked as a MLO during the misclassification time period.  (*Id.*)

Further, the settlement provides relatively early relief to class members, and eliminates

the additional risks they would otherwise face if the litigation continued.  (*Id.* ¶ 12.)  Absent

settlement, the parties would have engaged in extensive discovery (including written discovery

and multiple depositions) and motion practice (class certification, FLSA decertification,

summary judgment).  (*Id.*)   While Plaintiffs maintain that they would ultimately prevail on

these issues, they recognize the inherent risk of litigation, particularly in this unique area of the

law.  *See, e.g.*, *Henry v. Quicken Loans, Inc.*, 698 F.3d 897 (6th Cir. 2012) (after eight years of

litigation, affirming jury verdict that mortgage bankers were properly classified as exempt from

the overtime pay requirements of the FLSA); *Foster v. Nationwide Mut. Ins. Co.*, 710 F.3d 640

(6th Cir. 2013) (affirming bench trial verdict that special investigators were properly classified

as exempt from the overtime pay requirements of the FLSA).  By agreeing to the Settlement,

those risks are eliminated and participating class members are guaranteed to receive an excellent

recovery now, rather than to *possibly* receive a recovery years from now.

### 2. *Society's stake in rewarding attorneys who produce the benefits to the class in order to maintain an incentive to others*

Society's stake in rewarding attorneys who bring class action wage-and-hour cases

favors the requested award.  *Gentrup v. Renovo Servs., LLC*, No. 1:07-cv-430, 2011 WL

2532922, at *4 (S.D. Ohio, June 24, 2011) ("[S]ociety has a stake in rewarding the efforts of the

attorneys who bring wage-and-hour cases, as these are frequently complex matters.").  Here,

Class Counsel recovered overtime wages for 1,150 MLOs.[2]  Without this lawsuit, few of these individuals would have known about their potential claims, let alone had the motivation or resources to pursue their claims.  *See Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-0729, 2012 WL 1945144, at *9 (S.D. Ohio May 30, 2012) ("Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own.").  Moreover, the requested award—33 ⅓% of the common fund—is within the range approved by Courts in this district, but not so high that it would constitute a windfall.  *See Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 616 (6th Cir. 2007).  This is especially true in light of the extensive work performed by Class Counsel over nearly three years of litigation and the results achieved.  Accordingly, this factor supports the requested fees.

### 3. Class Counsel undertook considerable risk of nonpayment in litigating this case on a contingency basis

Despite the risks associated with prosecuting this case (*e.g.*, conditional and class certification, Defendant's multiple defenses, the extent to which MLOs worked overtime hours, and willfulness), Class Counsel took this case solely on a contingency fee basis and were prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind.  (Lukas Decl. ¶ 29-32; Declaration of Robert E. DeRose ("DeRose Decl.") ¶ 26-28; Declaration of Jami Oliver ("Oliver Decl.") ¶ 8.)  Importantly, at the time Plaintiffs filed their Complaint, there were no obvious indications that a settlement would be reached or that the litigation would be successful.  (*Id.*)  Indeed, since then, the issue of whether loan officers like the MLOs at issue in this case are entitled to overtime pay has become more and more unclear, with federal courts, juries, and the Department of Labor reaching varying conclusions.

---

[2]  The settlement also resolves the claims of eight class members who submitted their claim forms after the deadline, and whose settlement payments will be paid from the reserve fund. (Lukas Decl. ¶ 10.)

*See, e.g.*, *Henry v. Quicken Loans, Inc.*, 698 F.3d 897 (6th Cir. 2012) (affirming summary judgment and jury verdict for employer finding that loan officers were properly classified as exempt); Administrator's Interpretation No. 2010-1, 2010 WL 1822423 (Mar. 24, 2010) (DOL interpretation finding that MLOs should be classified as non-exempt); *Lewis v. Huntington Nat'l Bank*, 838 F. Supp. 2d 703 (S.D. Ohio 2012) (upholding DOL interpretation); *Swigart v. Fifth Third Bank*, 870 F. Supp. 2d 500 (S.D. Ohio 2012) (same); *Mortgage Bankers Ass'n v. Harris*, 720 F.3d 966 (D.C. Cir. 2013) (vacating Administrator's Interpretation as improperly promulgated); *Hantz v. Prospect Mortgage, LLC*, No. 1:13CV1435 JCC/TRJ, 2014 WL 463019 (E.D. Va. Feb. 5, 2014) (granting employer's motion for summary judgment on exempt status of loan officer); *Cougill v. Prospect Mortgage, LLC*, No. 1:13CV1433 JCC/TRJ, 2014 WL 130940 (E.D. Va. Jan. 14, 2014) (denying employer's motion for summary judgment on exempt status of loan officer).

Collectively, Class Counsel committed 2,139 hours through the course of this litigation, a significant expenditure of time, all of which was devoted on a contingency basis with no guarantee of payment. (Lukas Decl. ¶ 13-17, 29-32; DeRose Decl. ¶ 12-16, 26-28; Oliver Decl. ¶ 7-8, 13-15.) Among other tasks, these hours were spent performing the following tasks that were integral to the successful resolution of this case: (1) initial investigation of potential claims; (2) drafting the various initiating documents and amended complaints; (3) interviewing the Named Plaintiffs as well as hundreds of Opt-in Plaintiffs regarding their claims; (4) responding to Defendant's motions to dismiss; (5) preparing and serving initial disclosures and discovery; (6) briefing conditional certification and issues related to the notice; (7) issuing the FLSA notice, filing consent forms, and communicating with putative opt-in Plaintiffs, (8) preparing a detailed mediation brief analyzing the facts, law, and damages; (9) preparing for and

attending the full-day mediation; (10) negotiating the settlement terms post-mediation; (11) performing detailed damage calculations and analysis for purposes of mediation and settlement allocation; (12) drafting, editing, and filing the Settlement Agreement and settlement approval papers; and (13) communicating with class members during the settlement notice period. These hours were reasonable and necessary given the breadth and scope of the issues in this case, as well as the dedicated efforts of counsel to obtain relief for the class. (Lukas Decl. ¶ 13-17; DeRose Decl. ¶ 12-16; Oliver Decl. ¶ 13-15.) In addition, Class Counsel will continue to represent the class members throughout the next twelve months to ensure that the settlement funds and tax documents are disseminated in a timely fashion and mailed to correct addresses, and to answer questions about the settlement. (Lukas Decl. ¶ 17; DeRose Decl. ¶ 16.)

This factor thus weighs in favor of awarding the requested fee. *See Gentrup*, 2011 WL 2532922, at *4 (finding that plaintiffs' counsel had made "significant investments of time and [had] advanced costs but [had] received no compensation in this matter" weighed in favor of the requested fee).

### 4. *The lodestar cross check supports approval of the requested fees*

As a way to "cross check" the fourth *Ramey* factor, the value of the services rendered, district courts calculate the lodestar figure and compare it with the amount requested under the percentage approach. *See In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d at 761. The number of hours expended "creating, protecting, or preserving the fund recovered" is then multiplied by a "reasonable hourly rate" to produce a lodestar figure. *Id.* The reasonable hourly rate is "is determined by reference to the prevailing market rates in the relevant community." *Lowther*, 2012 WL 6676131, at *4. The appropriate market to determine the reasonable hourly rate is that of similar types of cases, in terms of both size and complexity. *Id.* (*quoting McHugh*

*v. Olympia Entm't, Inc.*, 37 F. App'x 730, 740 (6th Cir. 2002)).  The FLSA is an area of the law practiced by a small subset of the bar, with even fewer attorneys capable of handling a case of this size and complexity, against a Defendant with seemingly unlimited resources. Accordingly, in calculating lodestar, Class Counsel (all of whom have experience litigating complex class and collective actions throughout the United States) are utilizing the hourly rates used in complex nationwide class and collective litigation, including the rates they would charge in their home courts and for paying clients.  These rates, however, are also supported by declarations from independent counsel with knowledge of the rate for legal services in Columbus, Ohio and Minneapolis, Minnesota.  (*See* Declaration of John S. Marshall; Declaration of Clayton Halunen.)

   The lodestar figure may be increased by "multiplying it by a factor it deems reasonable (the 'lodestar multiplier')." *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d at 761.  A variety of factors are examined in determining the appropriate multiplier, including, "the nature of the case, the market for such legal service, the risk involved and the results achieved." *Id.* The multiplier is designed to reward Class Counsel for taking on more risk, providing "superior quality" representation, or achieving a greater settlement.  *Id.*  Courts frequently award multipliers between one and four.  *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) (quoting 3 Herbert Newberg & Alba Conte, *Newberg on Class Actions*, § 14.03 at 14-5 (3d ed. 1992)).  The same is true in this district.  *See, e.g.*, *Lowther*, 2012 WL 6676131, at *5-6 (awarding $1,275,000 in fees with a lodestar cross-check of $416,669.48 (3.06 multiplier)); *Bailey v. AK Steel Corp.*, No. 1:06-cv-468, 2008 WL 553764, at *3 (S.D. Ohio Feb. 28, 2008) ("The multiplier [of 3.04] is fully warranted given the complexity of the case, the attendant risks, the size of the settlement recovered, and class

counsels' continuing obligations to the class, and it is well within the range of multipliers awarded in similar litigation."); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d at 767 (lodestar multiplier of 6.0, noting that the typical lodestar multiplier in large class actions "ranges from 1.3 to 4.5").

Class Counsel's total lodestar through May 2, 2014, is $655,281. (Lukas Decl. ¶ 13-17; DeRose Decl. ¶ 12-16; Oliver Decl. ¶ 13-15.)[3] The lodestar multiplier is thus 3.28, well within the range typically approved in this district. The reasonableness of the fee award and the multiplier are further evidenced by the fact that Class Counsel will expend additional time and resources over the next twelve months in order to oversee the disbursement of the settlement funds. (Lukas Decl. ¶ 17; DeRose Decl. ¶ 16.) Taking all of this into consideration, the lodestar crosscheck thus illustrates that Class Counsel's fee award is well within the range of reasonability, particularly for a case in which the class's reaction has been positive and considering the time and labor expended, the magnitude of the litigation, the risks, the monetary results achieved for the class, and the amount of the fee in proportion to the monetary settlement.

### 5. *The complexity of this litigation weighs in favor of the requested award*

Wage-and-hour collective and class actions are complicated and time-consuming. *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 479-80 (S.D.N.Y. 2013) (describing the unique risks and complexities in a wage-and-hour class action involving misclassification allegations). This is particularly true here, where Plaintiffs alleged overtime claims under the FLSA, and the state laws of Arkansas, California, Colorado, Illinois, Indiana, Kansas, Kentucky, Minnesota, Missouri, Montana, Nevada, New Mexico, Ohio, Oregon, Washington, and Wisconsin.

---

[3] Barkan Meizlish's lodestar is calculated through May 8, 2014. (DeRose Decl. ¶ 15.) Oliver Law Office's lodestar is calculated through April 30, 2014. (Oliver Decl. ¶ 13.)

Determining whether Defendant's MLOs were entitled to overtime compensation under these laws—at summary judgment or at trial—would have involved extensive discovery and detailed analysis of damages, likely requiring the use of an expert. (Lukas Decl. ¶ 31.) At the same time, however, Plaintiffs faced several procedural hurdles that may have prevented them from even getting to the merits: Defendant's motion to decertify the FLSA collective, and Plaintiffs' motion for Rule 23 certification of the state law claims. (*Id.*) Resolving the merits, damages, and procedural issues would have been risky, costly, and time consuming. (*Id.*) Accordingly, the litigation was difficult and complex, and this factor weighs in favor of awarding the requested fees.

### 6. *Class counsel's skill supports approval*

The skill and efficiency of attorneys is evidenced by their local reputations as well as their experience and expertise in the area. *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 249 (S.D. Ohio 1991). In assessing the skill of Class Counsel, it is also important to assess the quality of defense counsel as well, to determine the quality of service Class Counsel rendered. *See Lowther*, 2012 WL 6676131, at *3 (citing *Smillie v. Park Chem. Co.*, 710 F. 2d 271, 275 (6th Cir. 1983)). Class Counsel in this matter is Nichols Kaster, PLLP, Barkan Meizlish, LLP, and Oliver Law Offices. As discussed in the Declarations of Paul J. Lukas, Robert E. DeRose, and Jami S. Oliver, Class Counsel are qualified, experienced, and have substantial credentials representing plaintiffs, particularly employees, in class and collective action litigation. (Lukas Decl. ¶ 18-28; DeRose Decl. ¶ 17-25; Oliver Decl. ¶ 3-6.) Likewise, Defendant is represented by experienced and skilled local counsel at Vorys Sater Seymour & Pease, and attorneys with Morgan, Lewis & Bockius LLP, which has a national wage-and-hour collective and class action practice. The lawyers representing Defendant have

15

extensive experience representing employers in wage-and-hour class and collective actions, and particularly financial institutions.  Accordingly, the professional skill and standing of counsel on both sides is substantial and this factor supports approval of the requested fee award.

### 7.   *The requested fee award is comparable to fee awards in similar cases*

Lastly, although not one of the *Ramey* factors, comparing the fees requested in this case to the fees awarded in similar cases further evidences the reasonableness of Class Counsel's request for an award of 33 ⅓% of the settlement fund.  *See, e.g.*, *Johnson v. Midwest Logistics Sys., Ltd.*, No. 2:11-CV-1061, 2013 WL 2295880, at *6 (S.D. Ohio May 24, 2013) (awarding 33% of the settlement funds in class action case); *Kritzer*, 2012 WL 1945144 (in wage-and-hour class and collective action, awarding attorneys' fees and costs up to $235,000 in a settlement of $455,000 (52% of total recovery)); *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09CV1608, 2010 WL 2490989, at *7-8 (N.D. Ohio June 15, 2010) (approving attorneys' fees of one-third of the settlement amount in wage-and-hour class and collective action involving 1,778 employees); *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010) (approving attorneys' fee award of one-third of the total settlement amount in wage-and-hour class and collective action); *In re S. Ohio Corr. Facility*, 173 F.R.D. 205, 218 (S.D. Ohio 1997), *rev'd on other grounds*, 24 Fed. App'x 520 (6th Cir. 2001) (approving an award of $1.4 million in fees, representing 34% of the total amount of the common fund, and noting that it is within the 20% to 50% range of reasonableness); *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 913 (S.D. Ohio 2001) (noting that attorneys' fees awards typically range from 20% to 50% of the common fund); *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029, 1046 *decision clarified*, 148 F. Supp. 2d 936 (S.D. Ohio 2001) (same).

## II.    CLASS COUNSEL'S REQUEST FOR REIMBURSEMENT OF NECESSARY EXPENSES SHOULD BE APPROVED

"Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action."  *In re Datatec Systems*, No. 04-CV-525 (GEB), 2007 WL 4225828, at *9 (D.N.J. Nov. 28, 2007) (quoting *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J.  2001)); *see also In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 519 (W.D. Pa. 2003).

Class Counsel request reimbursement of expenses in the amount of $34,369.38 to cover costs associated with court fees, mediation, conference call charges, travel and accommodations, legal research, photocopying, and postage.  (Lukas Decl. ¶ 33-35; DeRose Decl. ¶ 29-31; Oliver Decl. ¶ 18.)  These expenses, while substantial, are reasonable given the full scope of this litigation to date, are documented on the books of Class Counsel, and are reasonable in relation to the Settlement Fund.  (*Id.*)  Moreover, they are reasonable in comparison with awards in other class action cases.  *See In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2012 WL 5493613, at *8 (E.D. Mich. Nov. 13, 2012) (approving costs to plaintiff's counsel related to travel, telephone, printing, postage, federal express, Westlaw and IT services); *In re BankAmerica Corp. Sec. Litig.*, 228 F. Supp. 2d 1061, 1066 (E.D. Mo. 2002) (awarding approximately $1.7 million to plaintiffs' counsel as reimbursement for out-of-pocket expenses advanced during the litigation including "expert witnesses; computerized research; court reporting services; travel expenses; copy, telephone and facsimile expenses; mediation; and class notification.").

## III.    THE PROPOSED ENHANCEMENT PAYMENTS ARE REASONABLE

Plaintiffs request that the Court award a total of $60,000 from the settlement fund as enhancement payments to the Named Plaintiffs, to be divided as follows: $5,000 to Original

Named Plaintiffs Heibel, Mook, Murray, Bostrom, Struck, and Kusserow, and $2,000 to Class Representatives Bickel, Evans, Glick, Honebrink, Isom, Jasicki, Karaffa, Ludwig, Marlin, Newton, Randall, Starkus, Wareham, Wicker, and Workman.

Courts in the Southern District of Ohio have approved incentive awards for class representatives after consideration of several factors, including their actions to protect the rights of the class members, whether those actions resulted in a substantial benefit to the class members, whether the class representative assumed any direct or indirect financial risk, and the amount of time and effort spent pursuing the litigation. *See Johnson*, 2013 WL 2295880, at *5 (citing *Hainey v. Parrott*, 617 F. Supp. 2d 668, 677 (S.D. Ohio 2007)).  Here, the parties tailored the modest enhancement awards to compensate each Named Plaintiff in proportion to his or her time and effort in prosecuting the claims asserted in this action.  For the Original Named Plaintiffs, the award of $5,000 each is reasonable and warranted given their significant contributions to the litigation.  Without their valuable assistance and participation, this case would not have been initiated.  (Lukas Decl. ¶ 36-37; DeRose Decl. ¶ 32-33; Oliver Decl. ¶ 17.) They provided key information to Class Counsel that considerably assisted in investigating, filing, litigating, and ultimately resolving this action. (*Id.*)  They met with Class Counsel on several occasions, and provided significant input that the course of the litigation and the ultimate settlement.  The remaining Named Plaintiffs asserted their claims as class representatives in the Third Amended Complaint for the Rule 23 classes.  (Lukas Decl. ¶ 37; DeRose Decl. ¶ 33.)  These Plaintiffs agreed to serve as class representatives against their former employer, which allowed Plaintiffs to seek certification of the Rule 23 classes in connection with preliminary approval of the settlement and to ultimately include the putative class members from those classes in the settlement.  (*Id.*)

In addition to their efforts in the litigation that directly benefitted the class members, Plaintiffs submit that the requested enhancement payments are also reasonable for a number of reasons.  First, given the amount of the total settlement and the modest size of the enhancements, the enhancements do not significantly reduce the amount of settlement funds available to the class members.  Second, enhancement payments like this advance public policy by encouraging other individuals to come forward to protect the rights of others in representative actions, particularly those involving employment statutes.  Third, the class members were notified of the request for enhancements in the settlement notice, and no class member objected.  (*See* Settlement Notice, ECF No. 157-2 p. 59-67.)  Fourth, Defendant does not oppose the award of the requested enhancement awards.  (Settlement Agreement, ECF No. 157-2 § VII ¶ 1.12.)  Fifth, the enhancement payments recognize that, unlike other class members, the Named Plaintiffs provided Defendant with additional consideration in the form of a general release.  (*Id.* § VII ¶ 1.7.)  Finally, the requested enhancement awards are in line with those approved by Courts in this circuit in similar cases.  *See e.g.*, *Johnson*, 2013 WL 2295880, at *5 (approving $12,500 enhancement award to the named plaintiff from a $452,380 settlement); *Dillworth*, 2010 WL 776933, at *7 (approving enhancement awards of $6,000 and $4,000).  As such, the requested enhancement payments are reasonable and should be approved.

## CONCLUSION

For all of the reasons stated above, Plaintiffs respectfully request that the Court award the requested attorneys' fees, costs, and enhancement payments, and enter the proposed Order submitted with the concurrently filed Motion for Final Class and Collective Action Settlement Approval.

Respectfully submitted this 9th day of May, 2014.

*/s/Paul J. Lukas*
Paul J. Lukas, MN Bar No. 22084X*
Timothy C. Selander, MN Bar No. 0387016*
**NICHOLS KASTER, PLLP**
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402-2242
Telephone: (612) 256-3200
Facsimile: (612) 215-6870
lukas@nka.com
selander@nka.com

*admitted pro hac vice*

*/s/Robert E. DeRose*
Robert E. DeRose (OH Bar # 0055214)
Robert K. Handelman (OH Bar # 0019589)
Robi J. Baishnab, Esq. (OH Bar # 0086195)
**BARKAN MEIZLISH HANDELMAN
GOODIN DEROSE WENTZ, LLP**
250 E. Broad St., 10th Floor
Columbus, OH 43215
Telephone: (614) 221-4221
Facsimile: (614) 744-2300
Email: bderose@barkanmeizlish.com
rhandelman@barkanmeizlish.com
rbaishnab@barkanmeizlish.com

*/s/Jami S. Oliver*
Jami S. Oliver
**OLIVER LAW OFFICES, INC.**
132 Northwoods Blvd., Ste. B
Columbus, Ohio 43235
Telephone: (614) 220-9100
Facsimile: (866) 318-4580
joliver@jamioliver.com

**Counsel for Plaintiffs and the Classes**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing MOTION AND MEMORANDUM OF LAW FOR

APPROVAL OF ATTORNEYS' FEES, COSTS, AND ENHANCEMENT PAYMENTS was

served via ECF upon the following counsel of record registered to accept electronic service on

May 9, 2014:

**MORGAN, LEWIS & BOCKIUS LLP**
John R. Richards
Samuel S. Shaulson
Carrie A. Gonell
Gregroy P. Abrams

**Vorys, Sater, Seymour and Pease LLP**
Mark A. Knueve (Trial Counsel)
Benjamin Shepler

*/s/Paul J. Lukas*
Attorney for Plaintiffs and the Class